Let's move on to the third case of the day, which is Acevedo v. Cook County Officers Electoral Board. Let's see, Mr. Abbasi, if you'd wait just a moment for counsel to settle down. Yes, your honor. Go ahead. Good morning, your honors. May it please the court, a pair of these Abbasi on behalf of the plaintiff appellant, Edward Eddie Acevedo. Mr. Acevedo had submitted signatures to run for Cook County Sheriff in the March 2018 primary. A record exam by the Cook County clerk found that he had ultimately turned in about 5,600 good signatures. That number was below the 8,236 that the election code required, the formula required for that office. But it was more than the 5,000 that is required for government. Counsel, does your client intend to run again? He does in the future, yes. And in terms of the mootness, I believe you're going to do this. Yeah, that's my question. Yes. And sort of the standard laid out in Krizlov v. Rednor is, one, is it repeatable but evading review. And the other is, does the individual plaintiff intend to run again? Mr. Acevedo, he does. He was a state rep for 20 years. He has law enforcement experience. He'd like to run again. And in terms of evading review and being- I accept the evading review. I just didn't know if he had expressed intent to run again. I have another question about the classification that you've drawn between the statewide requirement and the citywide, the subdivision requirement. So in the other cases in which there's been a classification, there's been a more direct analogy between the office or the party at the state level and then in the subdivision. Here, you're trying to draw an analogy between the requirement for the gubernatorial and sheriff. Why is that the same kind of similarly situated? So I think in general, so in making these ballot access analyses, the standard is Anderson v. Celebrezzi. It was brought up in the appellee more than myself, but it is a standard. The case that applied it to a situation similar to this is Norman v. Reed, where they applied Anderson to a case where it was a Herald Washington party. They were running a countywide slate, and they said, well, in that case, you would need 50,000 signatures to run for countywide, but they'd only need 25,000 to run for statewide. And so there was a disparity. And so in Norman v. Reed, Anderson was applied not just to the absolute signature number, but also to this disparity. And part of the analysis that goes at disparity is the level of what the offices are. And that can be seen in this court's decisions in Boe v. Board of Elections and Jerkson v. Board of Elections. So you're not arguing that Socialist Workers Party automatically triggers strict scrutiny. That's what I understood your argument to be. No, no, I've never. I don't think I've ever explicitly said strict scrutiny is what we need here in Socialist Workers Party. It was. But so what my argument is that Norman v. Reed used Anderson to uphold Socialist Workers Party. I don't know if I explicitly said that, but I said in terms of the burden shifting, the arguments I was making there. So Burdick is the standard, and we're looking to see if this is a severe restriction, and then part of what we look to to decide whether the state is narrowly tailored is the statewide requirement being less. Right. And to be honest, it might not even be whether it's a severe restriction. It's just the state has to show. It might even be a rational review, to be honest. There is a disparity, and when there is a disparity, we apply Anderson. We determine, OK, what is, how big is this disparity, and then are the state's interests accordingly. So it's the state's interest for the disparity. So by having a signature requirement of 5,000 for governor, the state's saying that all its interests for governor are satisfied with 5,000 signatures. We're running ballot clutter, showing a modicum of support, showing you can run a campaign. However, for sheriff, they're saying 5,000 signatures isn't good enough. You need 8,000 signatures. So your position is that there's no rational basis? No rational basis. Yeah, not even rational basis. So you can see that the Apolyse framework for analyzing the problem is the right one. You're just saying it fails because there's no rational basis. Right, and I'm saying that, too, that Norman versus Reed holds that the Anderson test isn't just for the absolute number of signatures. It's also for signature disparities. When you have disparities between offices, you apply the Anderson test, and you look at the magnitude of the disparity, and if there are any state interests. In Anderson, there was a line, Reed has adduced no justification for the disparity here, where they're saying the defendant, they saw there was this, you needed twice the number of signatures to run for a county office, such as sheriff, versus a state office, such as governor. And there was no justification offered for that. There was no justification why 50,000 signatures, or 25,000, excuse me, signatures out of Cook County were good enough to put you on the ballot as an independent for governor, yet it wasn't good enough to put you on the ballot for sheriff. Similarly here, if Mr. Acevedo had taken his 5,000 good signatures and gone to Springfield, he could have run for governor, and the state would have said all their interests are satisfied to run for governor. Yet if those 5,000 signatures weren't good enough to run for sheriff, the state needs to offer some kind of justification, or the defendants do. I understand, I think, that point, Mr. Abbasi, but the case law you're relying upon all involves, it seems like, much more demanding signature requirements, ballot access requirements, than fewer than 10,000 signatures in Cook County. That's true. It's not unreasonable to ask even for 10,000 signatures, is it? If the signature requirement for governor was 10,000, then a signature requirement for sheriff of up to 10,000. It's not discriminatory, do you agree with that? No, he's not being discriminated by race or party. So, I mean, if we just focus on requirements for running for sheriff in Cook County, there's nothing unreasonable or discriminatory about this requirement. So, in the abstract, 8,200 signatures, based on the case law, for a district the size of Cook County, would, in the abstract, be acceptable under Anderson. However, Anderson, or Norman v. Reed, holds that the Anderson test also must be, when you have a disparity between signature requirements, you have to apply Anderson to that disparity as well. Could the state fix this problem by just raising the requirements for statewide office? They could, yes. How would that help your client? Well, if they raise it to 10,000 in the future, you'd have to get 10,000 at that point. But at this point, the state's made the decision that all their interests, again, preventing ballot clutter, showing a modicum of support, they're saying 5,000 is good enough for statewide office. In order to, under Anderson, they have to have, at least show some interest, show some reason that makes some kind of argument that, okay, you need 8,000, you need 3,000 more signatures for this less significant office. So far, they haven't done that. I can't think of one. Perhaps if this were remanded, they could, for the proceedings before the Honorable District Court, we could have that argument. But the cases I've cited do have a sort of burden shifting to them, where, okay, we show that we have this, where the state is saying, I'm satisfied for governor, or in the injurts in this court's decision, you're saying that 5% is good enough for suburban committeemen, but it's not good enough for city committeemen, ward committeemen, when they do the same job. And then they put in their court, what's your justification? And they couldn't come up with one. So they said, okay, well, since there's no justification for this disparity, it fails. It's unconstitutional. And you're relying solely on the disparity, correct? That's correct, yes. And I think that... Were there any allegations, or was there any evidence presented at the TRO hearing with respect to what burden this might impose on your client? Beyond the... Other than just discrepancy. Right, just that, well, there's, I believe the Anderson test... But in your complaint... No, Your Honor. There was nothing. And was there any evidence at the preliminary injunction hearing with respect to whether or not any other challengers had historically been able to get this 8,000 number of signatures? There was that, actually. What was that evidence that was presented during the hearing? So there were other plaintiffs who were in the similar situation for water reclamation. Other than the plaintiffs here? And I believe we brought up four years ago that all the county-wide offices were unopposed because... But did you present evidence that others had attempted to run and had not run because they couldn't get the requisite signatures? I didn't see that. No, I've been saying that they were unopposed four years ago, or five years ago now, 2014. And were there any allegations, or was any evidence presented at the preliminary injunction hearing regarding the difficulty, if there was any, of your client obtaining these signatures? No, there was no evidence specifically to that. And to be honest, in Norman v. Reed, I didn't see any evidence of that either, other than the fact that, okay, you're telling me I need 5,000 or 50,000 signatures to run for these county-wide offices as an independent, but I need only 25,000. There's a disparity here. What's justification? Since the defendants provided no justification, they didn't even get to the discussion of whether it had to be. Is it relevant that Norman v. Reed is about independent party access, as opposed to internal party access in primaries? So, ultimately, what I am asking is for, what is the holding for independent and third parties to be applied to partisan primaries? I believe that it should. There is a lower signature requirement for partisan primaries than there are in Illinois, than there are for independent and third parties. However, partisan candidates have an additional step of having to win a primary. So, the same Anderson analysis applies that if, for a primary ballot, if you're saying, okay, 5,000 signatures takes care of everything I need to get on this primary ballot for governor, for the statewide office, it's more significant, then why isn't that enough to prevent ballot clutter and to show modicum of support for a local office, such as sheriff? Counsel, are you asking for remand simply so the state can articulate a rational basis for the disparity? Because, typically, if a rational basis is reviewed, a court affirms if it can posit any rational basis. Well, I think we still have to make the argument of whether, we have to do the Anderson analysis to figure out, okay, how severe is this burden? And then, is it correspondingly weighty, their reasoning? I'll say in these other cases, in Norman v. Reed, Jertson, and Socialist Worker Party, they couldn't find any justification. No justification was offered for these discrepancies. But the burden, there was a showing that the burden was severe, and you told Judge St. Eve that you hadn't introduced evidence to that effect about it being unduly burdensome, impossible to satisfy. Right, and it, I'm not, you know, so it is, as a percentage, it's more severe than Socialist Worker Party was. It's a 65% compared to about 40% for Socialist Worker Party. But it's only 8,000 votes in Cook County, or signatures in Cook County, right? Right. Half a percent, so. That is correct. I'll reserve the remaining two minutes for rebuttal. All right. Thank you. Thank you, counsel. Let's see. Counsel for the, some of the defendants, anyway. Mr. Prescott? Yes. May it please the court, my name is Frank Biestjot, and I represent the State Board of Elections. This court should affirm the dismissal of Acevedo's claim because the district court properly analyzed it under the Anderson-Burdick test. I think, it seems like there are a lot of things that we, that Acevedo agrees with us. Now that Anderson-Burdick applies, he seems to no longer be arguing that the standard is strict scrutiny. But under the Anderson-Burdick test, the first step is you look at the burden of the law on voters' rights and the ability to get on the ballot. Here, Acevedo has never argued and is now arguing that it imposes a severe burden. So in that case, then the second step of the analysis is that those laws are generally justified by the state's important interests in regulating fair and orderly elections. The disparity, or the difference in signatures, doesn't change the burden analysis because the burden of the 0.5% remains the same regardless of whatever the signature requirement is for a separate office. What Socialist Workers Party and Norman both did is that once you're in a strict scrutiny world, then you look at the disparity because that's pretty powerful evidence that it's not narrowly tailored. But the signature disparity itself doesn't change the type of analysis. It doesn't have an effect on the weight of the burden. Could the court make the analysis at the 12B6 stage without anything from the state or the county on what the rational basis was? Well, there was a rational basis for the law in general for the 0.5% burden. There wasn't a separate explanation for why one signature requirement is higher than the other because we just never really reached that point because that disparity was really being used to try and justify a higher standard of scrutiny, of strict scrutiny. So there really wasn't an inquiry into what a rational basis is. But this law, I mean, even though— I guess that's my question. Should there have been? I don't think so, Your Honor. That's not how it was really presented because once you have a modest burden, you don't have to look into a reason for the disparity. You just look into a reason for the requirement itself. And so there was never really an inquiry into the disparity. But even though the disparity may at first blush seem a bit odd, I don't think it's at all irrational because what it does is it balances the state's interest in preventing ballot clutter while also not giving an undue advantage to candidates from densely populated areas. And I can explain a little more how that works is that— So on the county level, the 0.5% requirement makes sense because it equalizes the burden among candidates across all the different geographic areas of the state regardless of what county you're in. You're going to face the same proportional burden. When you have just a single unit like the state, then whether you go with a percentage or just a flat number, either way, the same number is going to apply to everybody. And so by setting a 5,000 signature limit, that's actually quite a bit higher than the countywide signature limit that a candidate from a rural part of the state or a sparsely populated part of the state would have to meet. So it kind of balances those two interests. It's still high enough that it prevents ballot clutter, but it's not so high that it places an additional burden on candidates who are trying to run from areas where it's harder to gather signatures because there's less people around and it therefore takes more resources in order to get those signatures. So I think under rational basis review, the disparity would survive and the 0.5% by itself would survive and therefore the district court correctly dismissed the claim under Anderson's verdict. So other signature requirement provisions for other offices have some hard floors or hard caps, right? Yes. Why not Cook County? In terms of just a flat number? Yeah. We'll use this percentage, but there's a hard cap on the requirement and there's a minimum floor. Even if you're in a tiny county, you still need at least 25 signatures, right? Even if you're from a major party that's hopelessly outnumbered in a small rural county, you still need at least 25 signatures. Right. Well, I think one of the downsides of having a hard cap is then it creates a geographic disparity. So, for example, if you capped the signatures at 5,000 for Cook County, you would essentially have, I think, a 0.3% requirement for Cook County. And then you would probably have claims saying that that creates a constitutional problem because candidates in Cook County have an easier time getting on the ballot. And really what all this discussion, I think, about is it better to have a flat number or a percentage or should the specific number go up or down or should you have a different percentage? All this gets at is that it illustrates one of the great utilities of the Anderson verdict test is that it avoids judicial micromanagement of how legislature sets specific numbers. It asks initially, is there a severe burden or not? And if there's not a severe burden, then courts, I think, appropriately are reluctant to get into the business of deciding, well, should this have been 0.6% or 1%? Those sort of decisions are best left to the state legislatures. And that is one of the underlying rationales of the Anderson verdict test that would be undermined if we applied strict scrutiny or got into the weeds of what specific numbers should be applied. And to the extent that there's a reliance on the disparity, I mean, I guess we're no longer arguing about strict scrutiny, but if the disparity is what drives the analysis in the first instance, that would sort of undermine Anderson verdicts as well because one of the things the Anderson verdict did is it created a single standard under both the First and Fourteenth Amendments. And so it eliminated the need to have a separate equal protection analysis. And so that's why the district court applied the proper analysis of just looking at the burden, which here was 0.5%. And everybody agrees it's not burdensome. And then based on that, that requirement on its own is justified by the government's interest in orderly and fair elections. Can I ask you, as a citizen who's thinking I might want to run for office, where do they get the reliable number for the requirements for a particular office? If you want to run, you can go on the website for, I think the State Board of Elections website has it. I think the county board has it as well. In this case, I don't think there was, as I understand it, there wasn't a confusion about what the actual number was going to be. I was looking and I'm not, I was having a little trouble, but you know. And they do, I mean, at one point, I know they do put out like a separate sheet or flyer that has every office listed next to it, the number. County by county? Yes. Because you've got to do separate calculations for every county, right? Right. And every district. Can I also just ask one thing that seems very odd about the way this statute is written? It's based upon the number of voters in that party in the last general election. Correct. And there's kind of a sine wave on voter turnout, right, between presidential years and non-presidential years. And so to get on the ballot in the presidential years, you have the lower requirements. And then when you're going in an off year, you refer back to the presidential race with the higher turnout, and the number jumps up by maybe a third, right? Well, I don't think it would jump up that much. So, for example, I did a quick calculation for what it would be in 2020 based on the 2018 elections, which had a pretty high turnout. And the number would go up from the 8,236 to about 8,800. So a somewhat significant jump, but. So it would go up based on an off-year election? Well, 2018 had just a very high turnout for an off-year election. Right. Unusual. Right. But the numbers that I'd seen before were like 50 percent turnout of registered voters in off-year. Right. And closer to 75 percent in presidential years. So, yeah, it would be lower there. But, I mean, that's one of the reasons, though, why we have the Anderson verdict test is that it's inherently difficult to set these signature requirements in a way that's completely consistent. That makes everybody happy. A 0.5 percent requirement at least equalizes the burden across all the different geographic areas. And while the number may go up or down somewhat, it's not going to be necessarily a drastic change. And what the other thing it does is by having a 0.5 percent is that even on those years where you have a higher signature requirement, you're still not facing a severe burden because you're still talking about a relatively small percentage. And there was some discussion earlier about how many candidates there were in prior elections. And in the 2014 Democratic primary for Cook County Sheriff, there were four candidates. In 2010, there were two. In 2006, there were three. So this isn't a situation where nobody's getting on the ballot. In 2018, Cook County Assessor had three candidates for Democratic. In the Democratic primary, the President had two, Treasurer two. Was that presented to the district court? No, the district court I don't think ever got that far into it because the number was 0.5 percent was just so far below what's been upheld in other instances. And also there was the 90-day period in which to get the signatures. So the court, I think, just correctly found there was no severe burden. And really the argument below was about whether or not Socialist Workers' Party required a strict scrutiny analysis or just with the normal Anderson verdict test. I think there was an understanding that if you just apply Anderson verdict, then the 0.5 satisfies that test. And so unless your honors have any further questions, we would ask that you affirm the district court. Thank you, counsel. Thank you. Rebuttal, Mr. Abbasi? Yes, I would just argue that Norman v. Reed holds that the Anderson test is made both to the signature requirement in the abstract and as a disparity. And I'll bring up this court's decision in Libertarian Party v. Rednor where they upheld the same 5 percent signature requirement for a third party candidate. So I'm going back to what was struck down in Norman v. Reed, which were third parties. They upheld the 5 percent requirement for Libertarian congressional candidates, which is the same 5 percent requirement that if applied to Cook County writ large. And so it was found to be unacceptable because of the disparity with the statewide number. So Norman v. Reed, I believe, holds that Anderson is applied both to disparities when a state is saying this many signatures are good enough for this office. And the same, for instance, like I said, the same 5,000 signatures out of Cook County would be good enough for a governor. So if the remedy winds up being, if you prevail, okay, 5,000 is enough for Cook County offices, what's going to stop the next person from arguing that's crazy? It's certainly irrational to have the same number required for a local office like Cook County as for Governor of Illinois. Do you come back? Does somebody else come back? I point to the Supreme Court saying in both Socialist Worker Party and Norman v. Reed that the statewide cap is sufficient. Or is the number it can go up to. And one quick other thing, when I said I wasn't arguing for strict scrutiny, I'm just saying, I'm not saying it was an automatic strict scrutiny, but again, the Anderson test is applied, so we would analyze the burden, if this were back in front of the district court, see how big of a burden is this, both percentage-wise and number-wise, and then find the appropriately weighty justifications needed at that point. All right. Thank you, counsel. Thanks to both counsel. Case will be taken under advisement.